**R23 LAW APC**
Peng Shao (SBN 319624)
Peng@R23Law.com
Jared V. Walder (SBN 310687)
Jared@R23Law.com
633 West Fifth St. 26th Floor
Los Angeles, CA 90071
Tel:   888-533-2948
Fax:  415-558-0230

*Attorney for Plaintiff Michelle Stevens*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE STEVENS, an individual; | CASE NO. 2:24-CV-08533 |
| Plaintiff, | |
| v. | **FIRST AMENDED COMPLAINT FOR:** |
| ABSOLUTE RESOLUTIONS INVESTMENTS LLC; WEBBANK; NAOMI MOORE, an individual; and DOES 1 to 20, inclusive; | 1. **BREACH OF CONTRACT;**<br>2. **FDCPA;**<br>3. **RFDCPA;** |
| Defendants. | 4. **FCRA;**<br>5. **CCRAA;**<br>6. **INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS;**<br>7. **INTRUSION UPON SECLUSION;**<br>8. **UNRUH CIVIL RIGHTS ACT** |
| | **JURY TRIAL DEMANDED** |

Plaintiff MICHELLE STEVENS ("Stevens" or "Plaintiff"), an individual, files this Complaint and Demand for Jury Trial against Defendants ABSOLUTE RESOLUTIONS INVESTMENTS LLC ("ARI"); WEBBANK ("WebBank"); NAOMI MOORE and DOES 1-20, inclusive (collectively "Defendants"), and based on information and belief, hereby alleges and complains as follows:

## INTRODUCTION

1.     This is a breach of contract and unfair debt collection action involving Plaintiff Michelle Stevens – a transgender person who has long suffered from debilitating physical and mental health issues, and is a survivor of severe trauma and abuse.

2.     Plaintiff was the account holder of a revolving credit account issued by Defendant WebBank with the account number ending in xx8280 (the "Debt" or the "Account").

3.     Plaintiff previously disputed the Debt in arbitration, and was led to believe that the dispute was fully resolved after executing a settlement agreement on March 22, 2024 with Defendant ARI (the "Settlement Agreement"), which is attached as **Exhibit 1** to this Complaint.

4.     However, Defendant ARI breached the Settlement Agreement on September 03, 2024, by initiating a lawsuit against Plaintiff in in California Superior Court for the County of Los Angeles.  A copy of the underlying state court lawsuit ("State Action") docket is attached as **Exhibit 2** to this Complaint.

5.     In other words, Defendant ARI sued Plaintiff to collect on the Debt – less than six-months after the Settlement Agreement was signed by ARI's Chief Legal Officer – Defendant NAOMI MOORE ("Moore").

6.     Defendants further breached the Settlement Agreement by failing to delete related tradelines from Plaintiff's credit reports as agreed upon per terms of the Settlement Agreement.

7.     Defendants' actions directly caused severe deterioration and damage to

Plaintiff's emotional health, rendering them suicidal.  This is evidenced by the declaration of Plaintiff's mental health care-provider attached as **Exhibit 3** to this Complaint.

8.      Accordingly, Plaintiff seeks recovery for their actual damages, statutory penalties, punitive damages, as well as attorney's fees and costs.

## FACTUAL ALLEGATIONS AND PROCEDURAL HISTORY

9.      On or about February 2024, Plaintiff Stevens was engaged in a dispute with ARI over the Account originally issued by WebBank, branded as the Jasper Credit Card, before the American Arbitration Association (the "Arbitration").

10.      ARI had acquired the Debt from WebBank and began its initial collection efforts against Stevens, despite the Account already being in dispute.

11.      Plaintiff then initiated arbitration against ARI in February 2, 2024, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), the California Rosenthal Act, and the Fair Credit Reporting Act ("FCRA"), as well as claims for negligence and harassment.

12.      During the Arbitration, ARI failed to comply with procedural requirements mandated by the American Arbitration Association ("AAA"), resulting in the arbitration being closed out in Plaintiff's favor.

13.      In response to ARI's conduct, Plaintiff filed a complaint with the Consumer Financial Protection Bureau (the "CFPB") on or about March 4, 2024, outlining ARI's continued failure to adhere to arbitration rules and its improper collection practices.

14.      The CFPB reviewed Plaintiff's complaint and took responsive action, which included notifying ARI of the violations outlined by Plaintiff, further reinforcing Plaintiff's claims regarding ARI's unlawful collection efforts.

15.      Shortly thereafter, on March 22, 2024, Plaintiff and ARI entered into the Settlement Agreement to resolve the arbitration, wherein ARI agreed to release Plaintiff from any further liability for the debt and to cease all collection activities.

16.    The Settlement Agreement was signed by Defendant Moore, Defendant ARI's Chief Legal Officer.

17.    The Settlement Agreement also required Defendants to request deletion of the associated trade lines from all credit reporting agencies.

18.    Upon information and belief, despite the Settlement Agreement, ARI, under the direction or authorization of Defendant Moore, continued collection efforts against Plaintiff, including the filing of this underlying lawsuit on September 3, 2024, in direct violation of the Settlement Agreement, the FDCPA, and the Rosenthal Act.

19.    Defendant ARI's State Action Complaint, entered on September 3, 2024, falsely alleged that Plaintiff still owed a balance on the Account, despite being fully released from any further liability under the Settlement Agreement.

20.    In further violation of the Settlement Agreement, Defendants failed to request deletion of the associated trade lines, which continued to appear on Plaintiff's credit reports.

21.    In addition to ARI's actions, WebBank failed to correct or delete the tradeline from Plaintiff's credit reports, further perpetuating inaccurate information about Plaintiff's financial standing.

22.    Furthermore, ARI and WebBank conducted multiple unauthorized hard credit inquiries on Plaintiff's credit report <u>after</u> the Settlement Agreement was executed, damaging Plaintiff's credit score and violating federal and state laws.

23.    On September 3, 2024, Defendant ARI filed its State Action Complaint and sued Plaintiff to collect on the already settled Debt.

24.    On September 13, 2024, Plaintiff filed an Answer, <u>and</u> a Cross-Complaint with Counter Claims against Defendants in response to the State Action in Los Angeles Superior Court.

25.    Also on September 13, 2024, Plaintiff's counsel provided electronic notice to Defendants regarding the filing of the State Action Answer and the Cross-

Complaint.

26.    The State-Action Answer was immediately processed by the court and entered on September 13, 2024.

27.    However, Plaintiff's State Action Cross-Complaint was stuck in processing.

28.    Defendants then filed a Request for Dismissal of the State Action after receiving notice of their unlawful actions, which was entered on September 19, 2024.

29.    Los Angeles Superior Court then rejected Plaintiff's State Action Cross-Complaint on October 2, 2024.

30.    Plaintiff now brings their claims before this Court for adjudication.

31.    As a direct result of Defendants' actions, Plaintiff suffered severe emotional distress, including exacerbation of their mental health issues, and economic harm in the form of damage to their credit.

32.    Plaintiff's emotional distress was further amplified by Defendant ARI's unlawful actions, with Moore, acting in her capacity as Chief Legal Officer, knowingly authorizing the lawsuit and collection efforts in violation of the Settlement Agreement.

33.    Plaintiff has suffered severe emotional distress directly due to the actions of Defendants.

34.    Plaintiff has become suicidal directly due to the actions of Defendants.

35.    Plaintiff suffered, and continues to suffer, actual damages including emotional distress, damages to their creditworthiness, loss of earnings, and damage to their reputation due to the actions of Defendants.

36.    Defendants' actions involve an unjustifiably high risk of harm that was either known or so obvious that it should be known.

37.    Defendants' outrageous, abusive, and malicious acts constituted an intrusion upon Plaintiff's seclusion.

38. Accordingly, Plaintiff seeks recovery for their actual damages, statutory penalties, punitive damages, as well as attorney's fees and costs.

## JURISDICTION AND VENUE

39. Jurisdiction of this Court arises pursuant to 28 U.S.C. § 1331 due to federal causes of action under 15 U.S.C. § 1681, and under 28 U.S.C. § 1332 due to diversity of citizenship.

40. Jurisdiction is proper in this Court because the amount in controversy exceeds the jurisdictional minimum of this Court, and this case involves the violation of Federal statutes.

41. Because all Defendants conduct business within the State of California, personal jurisdiction is established.

42. Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) Plaintiff resides in this judicial district; (ii) the conduct complained of herein occurred within this judicial district; and (iii) Defendant conducted business within this judicial district at all times relevant.

43. Mandarich's (defined below) conduct occurred in/was directed to this District through filing and prosecuting the 9/3/2024 state action.

## PARTIES

44. Plaintiff Michelle Stevens is a natural person and resident of the Los Angeles County, California.

45. Plaintiff is a "consumer" as that term is defined by Cal. Civ. Code § 1785.3(c); 15 U.S.C. § 1681a(c); and, 15 U.S.C. § 1692a(3)., and is a "debtor" as defined by Cal. Civ. Code § 1788.2(h).

46. Defendant ARI is a "debt collector" in the State of California with the California Debt Collector License Number 10795-99.

47. Defendant WebBank is a Utah chartered industrial bank that conducts business operations in the state of California.

48. Defendant Naomi Moore is an executive and agent of Defendant ARI,

with the title of Chief Legal Officer.

49.     MANDARICH LAW GROUP, LLP ('Mandarich') is a California limited liability partnership that regularly collects consumer debts in California, including through litigation, and is a 'debt collector' under 15 U.S.C. § 1692a(6) and Cal. Civ. Code § 1788.2(c).

50.     Plaintiff substitutes DOE 1 with Mandarich Law Group, LLP pursuant to Cal. Code Civ. Proc. § 474.

51.     Defendants ARI and WebBank are each a "furnisher of information" as contemplated by FCRA sections 1681s-2(b), that regularly and in the ordinary course of business furnish information to one or more consumer reporting agencies about consumer transactions or experiences with any consumer.

52.     Defendants ARI and WebBank, in the ordinary course of business, regularly, on behalf of themselves or others, engages in "debt collection" as that term is defined by California Civil Code § 1788.2(b), and is therefore a "debt collector" as that term is defined by California Civil Code § 1788.2(c), and Defendants ARI and WebBank are each a "debt collector" under 15 U.S.C. § 1692a(6).

53.     This action arises out of a "debt" as that term is defined by Cal. Civ. Code § 1788.2(d); and, 15 U.S.C. § 1692a(5) that was incurred as a result of a "consumer credit transaction" as defined by Cal. Civ. Code § 1788.2(e).

54.     The causes of action herein also pertain to Plaintiff's "consumer credit report" as that term is defined by Cal. Civ. Code § 1785.3(d), in that inaccurate representations of Plaintiff's creditworthiness, credit standing, and credit capacity were made via written, oral, or other communication of information by a consumer credit reporting agency, which is used or is expected to be used, or collected in whole or in part, for the purposes of serving as a factor in establishing Plaintiff's eligibility for, among other things, credit to be used primarily for personal, family, household and employment purposes.

55.     While the March 22, 2024 Settlement Agreement (Ex. 1) was in effect

and after ARI agreed to release Plaintiff and cease all collection activity, Mandarich, acting as counsel and agent for ARI, prepared, filed, and caused service of a collection lawsuit in the Los Angeles Superior Court, notwithstanding the release.

56.     After receiving notice of the settlement and Plaintiff's defenses, the action was dismissed on September 17–19, 2024, but not before causing damages (time, expense, emotional distress).

## **FIRST CAUSE OF ACTION**

### Breach of Contract

*[Against ARI, MOORE, and DOE Defendants]*

57.     Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

58.     Plaintiff and ARI entered into a binding Settlement Agreement, wherein ARI agreed to release Plaintiff from any further liability on the Account and to cease all collection activities related to the Account.

59.     The Settlement Agreement also required ARI to request deletion of the tradeline associated with the Account from all credit reporting agencies.

60.     Plaintiff has fully performed all obligations required under the Settlement Agreement.

61.     Despite the terms of the Settlement Agreement, ARI, acting through its Chief Legal Officer, Defendant Moore, breached the Settlement Agreement by continuing to engage in collection efforts, including filing the underlying lawsuit against Plaintiff on September 3, 2024.

62.     ARI further breached the Settlement Agreement by failing to request the deletion of the tradeline associated with the Account from Plaintiff's credit reports, resulting in continued negative reporting that caused damage to Plaintiff's credit standing.

63.    Moore, acting in her capacity as Chief Legal Officer of ARI, directly authorized and participated in the breach of the Settlement Agreement by directing, authorizing, and/or approving the continuation of collection efforts against Plaintiff.

64.    As a direct and proximate result of Defendants ARI's and Moore's intentional, willful, and/or reckless breach of the Settlement Agreement, Plaintiff has suffered damages, including emotional distress, damage to her credit, and economic harm.

65.    Alternatively, Plaintiff alleges that Defendants' conduct was negligent.

66.    Plaintiff is entitled to actual damages in an amount to be proven at trial, punitive damages, attorney's fees and costs, as well as any other relief the Court deems just and proper.

## SECOND CAUSE OF ACTION

### Violation of the Fair Debt Collection Practices Act (FDCPA)

*[Against ARI, MOORE, MANDARICH, and DOE Defendants]*

67.    Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

68.    ARI is a "debt collector" as defined by the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692a(6), as it regularly engages in the collection of debts owed or asserted to be owed by consumers, including the Account.

69.    Mandarich is a 'debt collector' within § 1692a(6). By filing and prosecuting a collection action on a debt that had been released and as to which ARI agreed to cease all collection, Mandarich used false, deceptive, and misleading representations regarding the legal status of the debt (§ 1692e, including § 1692e(2)(A), (5), (10)), and employed unfair or unconscionable means to collect an amount not permitted by law or agreement (§ 1692f; § 1692f(1)). To the extent Mandarich communicated directly with Plaintiff knowing Plaintiff was represented,

it also violated § 1692c(a)(2).

70.    At all relevant times, Moore, acting in her capacity as Chief Legal Officer of ARI, participated in, authorized, and oversaw ARI's debt collection activities, including those directed at Plaintiff.

71.    ARI and Moore violated the FDCPA by continuing to engage in collection efforts against Plaintiff, despite the existence of the Settlement Agreement, which released Plaintiff from any further liability for the Account.

72.    ARI and Moore further violated the FDCPA by filing a collection lawsuit against Plaintiff on or about September 3, 2024, without legal justification and in direct contravention of the Settlement Agreement.

73.    In addition, ARI and Moore violated the FDCPA by reporting inaccurate information related to the Account on Plaintiff's credit reports and failing to request the deletion of the tradeline as required by the Settlement Agreement.

74.    ARI and Moore also violated the FDCPA by conducting unauthorized credit inquiries on Plaintiff's credit report after the Settlement Agreement was executed.

75.    ARI's and Moore's conduct constitutes unfair, deceptive, and unlawful debt collection practices in violation of the FDCPA, 15 U.S.C. § 1692 et seq.

76.    As a direct and proximate result of Defendants' intentional, willful, and/or reckless violations of the FDCPA, Plaintiff has suffered damages, including emotional distress, damage to her credit, and economic harm.

77.    Alternatively, Plaintiff alleges that Defendants' conduct was negligent.

78.    Plaintiff is entitled to actual damages in an amount to be proven at trial, statutory penalties, punitive damages, attorney's fees and costs, as well as any other relief the Court deems just and proper.

## **THIRD CAUSE OF ACTION**

Violation of the Rosenthal Fair Debt Collection Practices Act (RFDCPA)

*[Against ARI, MOORE, MANDARICH, and DOE Defendants]*

79.     Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

80.     ARI is a "debt collector" as defined by the Rosenthal Fair Debt Collection Practices Act (RFDCPA), California Civil Code § 1788.2(c), as it regularly engages in the collection of consumer debts, including the Account.

81.     At all relevant times, Moore, acting in her capacity as Chief Legal Officer of ARI, participated in, authorized, and oversaw ARI's debt collection activities, including those directed at Plaintiff.

82.     Defendants' violated the RFDCPA by continuing to collect on the Account after it had been released under the terms of the Settlement Agreement, without a valid legal basis to do so.

83.     Defendants' further violated the RFDCPA by filing a collection lawsuit against Plaintiff on or about September 3, 2024, in direct violation of the Settlement Agreement.

84.     Defendants' also violated the RFDCPA by reporting inaccurate information related to the Account to credit reporting agencies and failing to request the deletion of the tradeline, as required by the Settlement Agreement.

85.     In addition, Defendants violated the RFDCPA by conducting unauthorized credit inquiries on Plaintiff's credit report after the Settlement Agreement was executed, without Plaintiff's consent.

86.     Defendants' conduct constitutes unfair and unlawful debt collection practices in violation of the RFDCPA, California Civil Code § 1788 *et seq*.

87.     Mandarich's conduct also violated the Rosenthal Act, including Cal. Civ. Code § 1788.17 (incorporating §§ 1692e and 1692f).

88.     As a direct and proximate result of Defendants' intentional, willful, and/or reckless violations of the RFDCPA, Plaintiff has suffered damages, including emotional distress, damage to her credit, and economic harm.

89.     Alternatively, Plaintiff alleges that Defendants' conduct was negligent.

90.     Plaintiff is entitled to actual damages in an amount to be proven at trial, statutory penalties, punitive damages, attorney's fees and costs, as well as any other relief the Court deems just and proper.

## FOURTH CAUSE OF ACTION

### Violation of the Fair Credit Reporting Act (FCRA)

*[Against ARI, MOORE, and DOE Defendants]*

91.     Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

92.     ARI and WebBank are each considered a "furnisher of information" under the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681s-2, as they provide information about consumer accounts, including the Account, to credit reporting agencies.

93.     The FCRA requires that furnishers of information provide accurate and complete information to credit reporting agencies and correct any inaccurate information that they have previously reported.

94.     The Settlement Agreement between Plaintiff and ARI required ARI to request the deletion of the tradeline associated with the Account from all credit reporting agencies.

95.     Despite the Settlement Agreement, ARI and WebBank failed to request the deletion of the tradeline and continued to allow inaccurate information about the Account to be reported to credit reporting agencies, which falsely reflected that Plaintiff still owed a balance on the Account.

96.     ARI and WebBank further violated the FCRA by conducting unauthorized credit inquiries on Plaintiff's credit report after the Settlement Agreement was executed, despite Plaintiff having been released from liability for the Account.

97.    Plaintiff further alleges that Defendants lack reasonable procedures to prevent this violation and similar violations of the FCRA.

98.    As a direct and proximate result of ARI's and WebBank's violations of the FCRA, Plaintiff's credit report contained inaccurate information, which damaged Plaintiff's credit standing and caused emotional and financial harm.

99.    ARI's and WebBank's failure to correct or delete inaccurate information and their unauthorized credit inquiries constitute willful and negligent violations of the FCRA.

100.   Plaintiff is entitled to actual damages in an amount to be proven at trial, statutory penalties, punitive damages, attorney's fees and costs, as well as any other relief the Court deems just and proper.

## FIFTH CAUSE OF ACTION

Violation of California Consumer Credit Reporting Agencies Act (CCRAA)

*[Against ARI, MOORE, and DOE Defendants]*

101.   Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

102.   ARI and WebBank are both "furnishers of information" as defined under the California Consumer Credit Reporting Agencies Act (CCRAA), California Civil Code § 1785.25, as they provide information about consumer accounts, including the Account, to credit reporting agencies.

103.   Under the CCRAA, furnishers of information are required to provide accurate information to credit reporting agencies and to correct any inaccurate or incomplete information that has been previously reported.

104.   The Settlement Agreement between Plaintiff and ARI required ARI to request the deletion of the tradeline associated with the Account from all credit reporting agencies, but ARI and WebBank failed to comply with this requirement.

105.   ARI and WebBank knowingly provided and continued to allow

13

inaccurate information regarding the Account to be reported to credit reporting agencies, including that Plaintiff still owed a balance on the Account, in violation of California Civil Code § 1785.25(a).

106.   ARI and WebBank further violated the CCRAA by conducting unauthorized credit inquiries on Plaintiff's credit report after the Settlement Agreement was executed, without Plaintiff's consent or any legitimate purpose, in violation of California Civil Code § 1785.11.

107.   Plaintiff further alleges that Defendants lack reasonable procedures to prevent this violation and similar violations of the CCRAA.

108.   As a direct and proximate result of ARI's and WebBank's violations of the CCRAA, Plaintiff has suffered damages, including harm to her credit standing, emotional distress, and economic harm.

109.   ARI's and WebBank's failure to correct or delete inaccurate information and their unauthorized credit inquiries constitute willful and negligent violations of the CCRAA.

110.   Plaintiff is entitled to actual damages in an amount to be proven at trial, statutory penalties, punitive damages, attorney's fees and costs, as well as any other relief the Court deems just and proper.

## SIXTH CAUSE OF ACTION

### Intentional Infliction of Emotional Distress

*[Against All Defendants]*

111.   Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

112.   Defendants engaged in extreme and outrageous conduct by continuing to pursue collection efforts, filing a lawsuit, and conducting unauthorized credit inquiries against Plaintiff, despite the Settlement Agreement releasing Plaintiff from any further liability on the Account.

113.   Defendants' conduct was done with reckless disregard of the probability of causing Plaintiff severe emotional distress.

114.   As a direct and proximate result of Defendants' conduct, Plaintiff suffered severe emotional distress, including exacerbation of pre-existing mental health issues, suicidal ideation, and economic harm.

115.   Plaintiff is entitled to actual damages in an amount to be proven at trial, statutory penalties, punitive damages, attorney's fees and costs, as well as any other relief the Court deems just and proper.

## SEVENTH CAUSE OF ACTION

### Intrusion upon Seclusion

### *[Against All Defendants]*

116.   Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

117.   Plaintiff had a reasonable expectation of privacy concerning her personal financial information, including her credit information and the status of the Account after the Settlement Agreement.

118.   Defendants willfully, intentionally, and/or recklessly intruded upon Plaintiff's privacy by conducting unauthorized hard credit inquiries and continuing to report inaccurate information about the Account, despite the Settlement Agreement releasing Plaintiff from further liability.

119.   The intrusion into Plaintiff's private affairs was highly offensive to a reasonable person and caused Plaintiff emotional distress and damage to her credit standing.

120.   Alternatively, Plaintiff alleges that Defendants' conduct was negligent.

121.   Plaintiff is entitled to actual damages in an amount to be proven at trial, statutory penalties, punitive damages, attorney's fees and costs, as well as any other relief the Court deems just and proper.

## EIGHTH CAUSE OF ACTION

### Violation of the Unruh Civil Rights Act

### *[Against All Defendants]*

122.   Plaintiff hereby alleges and incorporates by reference each and every allegation stated in the preceding paragraphs of the Complaint as though set forth fully herein.

123.   The Unruh Civil Rights Act, California Civil Code § 51, prohibits discrimination based on protected characteristics, including gender identity.

124.   Plaintiff is a transgender person and is therefore a member of a protected class under the Unruh Civil Rights Act.

125.   Defendants' violated the Unruh Civil Rights Act by targeting Plaintiff in their intentional breach of contract and unlawful collection efforts, knowing that Plaintiff is a transgender person and taking advantage of their vulnerability.

126.   As a direct and proximate result of Defendants' willfully, intentionally, and/or recklessly discriminatory actions, Plaintiff suffered emotional distress, damage to her credit, and economic harm.

127.   Alternatively, Plaintiff alleges that Defendants' conduct was negligent.

128.   Plaintiff is entitled to actual damages in an amount to be proven at trial, statutory penalties, punitive damages, attorney's fees and costs, as well as any other relief the Court deems just and proper.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for judgment against all Defendants, and each of them, as follows:

1.     For declaration that Defendants' practices violate the law;

2.     For actual, compensatory, special, and general, damages in an amount according to proof;

3.     For punitive damages in an amount according to proof;

4.     For statutory penalties and punitive damages for each separate statutory

violation where allowed by statute;

5.    For pre- and post- judgment interest;

6.    For reasonable attorney's fees and costs;

7.    For injunctive relief as applicable, and

8.    For such other and further relief as the Court deems just and proper.

**JURY TRIAL DEMANDED.**

Respectfully submitted,

DATED:  October 8, 2025

BY:   */S/ Jared V. Walder*
        Jared V. Walder, ESQ

**R23 LAW APC**

*Attorney for Plaintiff Michelle Stevens*

# EXHIBIT 1

# Settlement Agreement

## <u>CONFIDENTIAL SETTLEMENT AGREEMENT AND RELEASE</u>

Michelle Stevens ("<u>Claimant</u>") and Absolut Resolutions Investments, LLC ("<u>ARI</u>"), are the parties referenced herein (referred to individually as a "<u>Party</u>" and collectively as the "<u>Parties</u>"),

## RECITALS

**Whereas**, Claimant allegedly incurred an indebtedness to Web Bank, described by Claimant as being assigned account number 4916V3, and which ARI subsequently acquired and attempted to collect from Claimant (the "<u>Alleged Indebtedness</u>");

**Whereas**, Claimant contests the validity of the Alleged Indebtedness;

**Whereas**, Claimant commenced an arbitration proceeding against ARI with the American Arbitration Association, captioned *Michelle Stevens v. Absolute Resolution Investments, LLC*, and assigned AAA file number 01-24-0000-4960 in which Claimant alleged that ARI failed to comply with the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq.* (the "<u>FCRA</u>"), the Fair Debt Collection Practices Act (the "<u>FDCPA</u>"), 15 U.S.C. § 1692 *et seq.*, the Rosenthal Fair Debt Collection Practices Act, California Civil Code § 1788 *et seq.* (the "<u>RFDCPA</u>"), as well as other theories of liability in connection with the Alleged Indebtedness (the "<u>Lawsuit</u>");

**Whereas**, the Parties desire to avoid further costly and time-consuming litigation regarding the claims between them and it is understood and agreed that the settlement evidenced by this Agreement is a compromise of disputed claims and the Parties wish to settle fully and finally all of the disputes of any nature between them.

**Now, therefore**, in light of the foregoing, for good and valuable consideration, the receipt of which is hereby mutually acknowledged, the Parties agree as follows:

1.    **Recitals**.    The recitals above are adopted and incorporated herein by reference as material terms of this Agreement

2.    **ARI Release of Claimant as to the Alleged Indebtedness**. In consideration for the resolution of the instant dispute, ARI shall release Claimant from any and all liability arising out of, or in any way related to, the Alleged Indebtedness, and the obligation to pay same. ARI further agrees to cease all collection activity regarding the Alleged Indebtedness and will not assign, sell or transfer any rights in connection with the Alleged Indebtedness to any person or entity.

3.    **Request for Tradeline Deletion**. Within 30 days after receipt of the signed Agreement, ARI will request, through ARI's standard process, that the Credit Bureaus delete ARI's reporting of the trade lines associated with the Alleged Indebtedness. Claimant agrees and acknowledges that ARI has no ability to delete the trade lines of the original or other owners of the Alleged Indebtedness, and that ARI's sole obligation shall be to submit the request to delete ARI's reporting of the trade line associated with the Alleged Indebtedness. Claimant acknowledges that the Credit Bureaus are separate entities from ARI. Accordingly, Claimant acknowledges that ARI cannot guarantee, warrant or take responsibility for the performance of the Credit Bureaus with respect to changing, deleting, suppressing or making entries regarding any credit information or other information regarding Claimant or the Alleged Indebtedness. Claimant represents that Claimant understands the limitations on ARI in this regard and that any action, omission and/or error by the Credit Bureaus shall not constitute a breach of this Agreement. Claimant acknowledges that the Credit Bureaus' processes for acting on ARI's request may take up to 120 days to be completed, and that ARI shall have no obligation to follow-up with the Credit Bureaus to ensure deletion. Provided that ARI has requested deletion of ARI's reporting of the trade line associated with the Alleged Indebtedness, Claimant hereby waives any and all Claims, whether arising in contract or tort, common law or statute and/or federal or state law (including, but not limited to, claims for any damages, attorneys' fees and/or costs) against ARI that may arise subsequent to the date of this Agreement and which arise out of or relate to actions required to be taken by ARI pursuant to this Paragraph.

4. **Claimant's Release of ARI**. Claimant, for the sole consideration described in Paragraphs 2 and 3, does release and forever discharge ARI, and its present and future parent, affiliates, subsidiaries, successors, divisions, heirs, executors, agents, employees, representatives, attorneys, administrators, insurers, and assigns, from any and all past and present actions, claims and demands, including claims or actions for contribution or indemnity of whatever nature now existing or arising from the acts of the parties released or their past, present and future parent, affiliates, subsidiaries, successors, divisions, heirs, executors, agents, employees, representatives, attorneys, administrators, insurers, and assigns regarding any and all collection or related efforts concerning sums allegedly owed by Claimant, including claims for personal injury damages, emotional distress damages, or any other claim which could have been asserted by Claimant against ARI from the beginning of time up to and through the date of this Release. This Release includes, but is not limited to, those claims asserted or which could have been asserted by Claimant in the Lawsuit or regarding the Alleged Indebtedness, including any and all claims arising after the date the Claimant commenced that action, through the date of this Release. This Release also includes, but is not limited to, any consequences thereof now existing or which may develop regarding the claims released in this Release, whether or not such consequences are known or anticipated.

5. **No Impact on Any Other Indebtedness or Account**. The Parties agree and acknowledge that no indebtedness or account other than the Alleged Indebtedness referenced herein is in any way impacted, impaired, or encompassed by this Agreement.

6. **Dismissal of the Lawsuit**. Within seven (7) days of receipt of this Agreement executed by ARI, Claimant shall execute a stipulation or otherwise effect dismissal with prejudice of the Lawsuit.

7. **No Admission of Liability**. Nothing in this Agreement, nor any act (including, but not limited to, the execution of this Agreement) of any of the Parties, nor any transaction occurring between the Parties prior to or on the date hereof is or shall be treated, construed or deemed as an admission by any Party hereto of any liability, fault, responsibility or guilt of any kind to any other Party hereto or to any person, as to any allegation or claim, or otherwise, for any purpose whatsoever, all such liability, fault, responsibility and guilt of any kind being expressly denied.

8. **Tax Considerations**. It is understood that the Parties are solely responsible for their own tax consequences, if any, arising from this Agreement.

9. **Additional Documents**. The Parties agree to execute and deliver such other and further instruments, documents and papers, and shall perform any and all acts necessary to give full force and effect to all of the terms and provisions of this Agreement.

10.    **Amendment**. This Agreement may not be amended unless such amendment is in writing and signed by the Parties.

11.    **No Waiver**. Any breach or violation of any provision of this Agreement may only be waived in writing by the party entitled to the benefits thereof; provided, however, that such waiver shall not operate as or be construed to be a waiver of any subsequent breach or violation hereof.

12.    **Benefit**. This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective members, officers, heirs, executors, administrators, successors, and assigns.

13.    **Severability**. If any provision of this Agreement shall be found by a court to be void, voidable, invalid or unenforceable, the remaining portions shall remain in full force and effect.

14.    **Counterparts**. This Agreement may be executed by facsimile, electronic signature, or electronic mail transmission and in counterpart originals by each Party that, when taken together, shall constitute the whole of the agreement as between the Parties. True and correct copies of the fully executed Agreement will be effective to enforce the terms and conditions set forth herein.

15.    **Governing Law**. The Parties agree that this Agreement shall be governed by the laws of the State of California.

16.    **Venue**. The Parties agree that should any dispute arise between them regarding this Agreement or the subjects addressed herein, any legal action between them shall be brought and litigated in California.

17.    **Confidentiality**.  As a major and material reason for executing this Agreement, Claimant further agrees that she will not at any time reveal or discuss in any way the fact of or terms of the settlement of the Lawsuit with any other person or entity except her spouse/significant other, legal counsel, tax advisors and as necessary to deal with tax issues and/or if she is required to disclose it pursuant to regulation or court order. This provision also binds Claimant's spouse/significant other, heirs, next-of-kin, executors, administrators, successors or assigns, agents, representatives and employees. Claimant, if represented by counsel, shall instruct her counsel to keep the fact of and terms of this settlement agreement confidential. Should Claimant be contacted by any third party regarding the Lawsuit or this Agreement, she agrees that she shall strictly confine any response to a statement that the matter has been resolved and shall not reveal any of the terms and conditions of said settlement and/or other details of this Agreement.

18.    **Drafting**. The terms of this Agreement are mutually agreed upon and no part of this Agreement will be construed against the drafter. Each Party has been represented by an

attorney of their choosing and is relying on his/her own attorney's advice prior to signing this Agreement, or has had the opportunity to obtain counsel of their choosing and declined.

19.    **Entire Agreement**. This Agreement supersedes all prior discussions and agreements among the Parties with respect to the subject matter hereof and with respect to the transactions set forth in this Agreement and constitutes the sole and entire agreement of the Parties with respect thereto.  Any representation, inducement, promise or agreement, whether oral or written, among the Parties with respect to the transactions described herein that are not embodied herein shall be of no force and effect.

20.    **Authority**.  Each individual executing this Agreement on behalf of an entity represents and warrants that he or she is a duly authorized representative of that entity with full power and authority to bind the entity to each term and condition hereof. Nanda represents and warrants that he is the age of majority, of sound mind, and possesses full power and authority to enter into, execute, and be bound by this Agreement. Nanda further represents and warrants that he has not entered into this Agreement as a result of any coercion or under duress.

21.    This Agreement covers and includes all Claims that Claimant has against the parties released in Paragraph 4 up to and including the date of this Agreement, whether actually known or not, despite the fact that any applicable state and/or federal law may provide otherwise.  Claimant hereby waives any rights or benefits under California Civil Code § 1542 (or any similar federal or state statute, regulation, or rule), which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT [Claimant] DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH [ARI AND OTHER PARTIES RELEASED]."

**THE PARTIES: (A) HAVE READ THIS AGREEMENT CAREFULLY; (B) HAVE OBTAINED THE ADVICE OF LEGAL COUNSEL, OR HAVE VOLUNTARILY ELECTED NOT TO DO SO; AND (C) ARE FULLY INFORMED OF THE CONTENT AND MEANING OF THIS AGREEMENT. CLAIMANT IS EXECUTING THIS NEGOTIATED SETTLEMENT AGREEMENT AND RELEASE OF LIABILITY VOLUNTARILY AND NOT UNDER DURESS OF ANY KIND.**

*THIS SPACE INTENTIONALLY LEFT BLANK*

*SIGNATURE BLOCKS FOLLOW*

Dated: _03/20/2024_                    *Michelle Stevens*
                                       _____
                                       **MICHELLE STEVENS**

**STATE OF** _Texas_           )
                                ) ss.
**COUNTY OF** _Galveston_      )

      Before me, a notary public for and within the above county and state, this _20th_ day of _March_, 2024, personally appeared _Michelle Stevens_ known to me to be the person named in and who executed the above release, and he acknowledged to me that he executed the same as his free act and deed.

*David Lynn Toole*
_____
Notary Public

> **NOTARY PUBLIC · STATE OF TEXAS**
> David Lynn Toole
> ID NUMBER
> 130548521
> COMMISSION EXPIRES
> February 22, 2028

Electronically signed and notarized online using the Proof platform.

**ABSOLUTE RESOLUTIONS INVESTMENTS, LLC**

Dated: _____          _____

                                       By: _____

                                       Its: _____

Page **6** of **6**

Dated: 03/20/2024                    *Michelle Stevens*
                                     **MICHELLE STEVENS**


STATE OF ___Texas___          )
                              ) ss.
COUNTY OF ___Galveston___     )

        Before me, a notary public for and within the above county and state, this ___20th___ day
of ___March___, 2024, personally appeared ___Michelle Stevens___ known to me to be the
person named in and who executed the above release, and he acknowledged to me that he
executed the same as his free act and deed.

                                     *David Lynn Toole*
                                     Notary Public

┌─────────────────────────────────┐
│  NOTARY PUBLIC   David Lynn Toole │
│  STATE OF TEXAS   ID NUMBER       │
│                   130548521       │
│              COMMISSION EXPIRES   │
│               February 22, 2028   │
└─────────────────────────────────┘

Electronically signed and notarized online using the Proof platform.

                        **ABSOLUTE RESOLUTIONS INVESTMENTS, LLC**

Dated: *March 22, 2024*    *Naomi Moore*

                        By: *Naomi Moore*

                        Its: *Chief Legal Officer*


Page **6** of **6**

# EXHIBIT 2

## State Action Docket

## CASE INFORMATION

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION

**Case Number:** 24CHLC33186

ABSOLUTE RESOLUTIONS INVESTMENTS LLC VS MICHELLE STEVENS

**Filing Courthouse:** Chatsworth Courthouse

**Filing Date:** 09/03/2024
**Case Type:** Collections Case - Purchased Debt (Charged Off Consumer Debt Purchased on or after January 1,2014) (Limited Jurisdiction)
**Status:** Request for Dismissal - Before Trial not following ADR or more than 60 days since ADR

Click here to access document images for this case

If this link fails, you may go to the Case Document Images site and search using the case number displayed on this page


## FUTURE HEARINGS

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION

None

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION

## Parties

Plaintiff:  ABSOLUTE RESOLUTIONS INVESTMENTS LLC

Defendant:  STEVENS MICHELLE

Attorney for Plaintiff:  MANDARICH CHRISTOPHER

Attorney for Defendant:  SHAO PENG

Case Information | Register Of Actions | FUTURE HEARINGS | PARTY INFORMATION

**09/19/2024** On the Complaint filed by Absolute Resolutions Investments Llc on 09/03/2024, entered Request for Dismissal without prejudice filed by Absolute Resolutions Investments Llc as to the entire action

**09/19/2024** Order to Show Cause re: Payment of Waived Fees; by:

**09/19/2024** Non-Jury Trial scheduled for 09/09/2025 at 08:30 AM in Chatsworth Courthouse at Department F41 Not Held - Vacated by Court on 09/19/2024

**09/17/2024** Request for Dismissal; Filed by: Absolute Resolutions Investments Llc (Plaintiff); As to: Absolute Resolutions Investments Llc (Plaintiff); Michelle Stevens (Defendant)

**09/17/2024** Updated -- Request for Dismissal: Filed By: Absolute Resolutions Investments Llc (Plaintiff); Result: Entered ; Result Date: 09/17/2024

**09/13/2024** Notice of Trial; Filed by: Clerk

**09/13/2024** Answer; Filed by: Michelle Stevens (Defendant); As to: Absolute Resolutions Investments Llc (Plaintiff)

**09/13/2024** Updated -- Event scheduled for 09/09/2025 at 08:30 AM in Chatsworth Courthouse at Department F41 Type changed from Order to Show Cause Re: Failure to File Proof of Service and Failure to File Default Judgment Pursuant to CRC 3.740 to Non-Jury Trial

**09/03/2024** The case is placed in special status of: Collections Case (CRC 3.740)

**09/03/2024** Case assigned to Hon. Brock T. Hammond in Department F41 Chatsworth Courthouse

**09/03/2024** Order to Show Cause Re: Failure to File Proof of Service and Failure to File Default Judgment Pursuant to CRC 3.740 scheduled for 09/09/2025 at 08:30 AM in Chatsworth Courthouse at Department F41

**09/03/2024** Notice of Case Assignment - Limited Civil Case; Filed by: Clerk

**09/03/2024** Order to Show Cause Hearing/Case Management Review (Cal. Rules of Court, rule 3.740); Filed by: Clerk

**09/03/2024** Declaration Declaration re: Venue; Filed by: Absolute Resolutions Investments Llc (Plaintiff); As to: Michelle Stevens (Defendant)

**09/03/2024** Declaration in Support of Bus. & Prof. Code 6322.1(c)(1); Filed by: Absolute Resolutions Investments Llc (Plaintiff); As to: Michelle Stevens (Defendant)

**09/03/2024** Summons on Complaint; Issued and Filed by: Absolute Resolutions Investments Llc (Plaintiff); As to: Michelle Stevens (Defendant)

**09/03/2024** Civil Case Cover Sheet; Filed by: Absolute Resolutions Investments Llc (Plaintiff); As to: Michelle Stevens (Defendant)

**09/03/2024** Complaint; Filed by: Absolute Resolutions Investments Llc (Plaintiff); As to: Michelle Stevens (Defendant)

# EXHIBIT 3

# Declaration of Nicole Hendrickson

**R23 LAW APC**
Peng Shao (SBN 319624)
Peng@R23Law.com
225 S. Grand Ave
Los Angeles, CA 90012
Tel:  888-533-2948
Fax:  415-558-0230

*Attorney for Plaintiff Michelle Stevens*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHELLE STEVENS, an individual;<br><br>Plaintiff,<br><br>v.<br><br>ABSOLUTE RESOLUTIONS INVESTMENTS LLC; WEBBANK; NAOMI MOORE, an individual; and DOES 1 to 20, inclusive;<br><br>Defendants. | CASE NO.<br><br>**DECLARATION OF NICOLE HENDRICKSON ISO PLAINTIFF'S COMPLAINT** |

I, Nicole Hendrickson, declare as follows:

1.      I am an adult, and am a licensed therapist, holding a Master of Arts in Clinical Forensic Psychology and Licensed Professional Clinical Counselor (LPCC) No. 6030. I practice at Downtown Mind Wellness, located at 617 S. Olive Street, Suite 200, Los Angeles, CA 90014.

2.      I have been treating Michelle "Dave" Stevens since April 2019 for individual outpatient psychotherapy. Over the course of treatment, Mr. Stevens has experienced several depressive episodes, which are often severe.

3.      These episodes manifest as low or irritable mood, feelings of hopelessness, shame, worthlessness, powerlessness, fatigue, insomnia, difficulty motivating, despair, and suicidal ideation.

4.      The depressive episodes are frequently exacerbated by external triggers, most notably surrounding Mr. Stevens' job and financial security. His mental health issues are also amplified by his current lack of health insurance.

5.      Since learning about a recent legal issue involving a lawsuit brought by Absolute Resolutions Investments, LLC (ARI), Mr. Stevens has reported increased suicidal ideation, despair, and hopelessness.

6.      This legal issue, particularly the ongoing lawsuit, has triggered a mental health crisis in Mr. Stevens, including active suicidal ideation.

7.      Due to financial constraints, the frequency of our psychotherapy sessions has decreased, which has further contributed to the exacerbation of his mental health symptoms. It is my professional opinion that Mr. Stevens requires ongoing mental health care to address both acute and chronic symptoms.

8.      The development and enforcement of a safety plan to manage suicidal ideation and prevent self-harm requires consistent psychotherapy and mental health support.

9.      As Mr. Stevens' therapist, I have witnessed firsthand the mental and emotional toll caused by the actions of ARI, particularly their breach of the settlement agreement and the continued legal harassment. The ongoing collection efforts and lawsuit have exacerbated Mr. Stevens' feelings of powerlessness and despair, directly triggering severe depressive episodes and suicidal ideation,

**DECLARATION OF NICOLE HENDRICKSON
ISO MICHELLE STEVENS CROSS-COMPLAINT**

which I believe are a direct result of these legal stressors.

10.     I submit this declaration to attest to the emotional and psychological toll the ongoing lawsuit has had on Mr. Stevens and to emphasize the urgent need for continued mental health care.

**I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.**

Executed on  Sep 12 2024 21:03 PDT

*Nicole Hendrickson*
_____
**Nicole Hendrickson, MA, LPCC 6030**
Licensed Professional Clinical Counselor

3
**DECLARATION OF NICOLE HENDRICKSON
ISO MICHELLE STEVENS CROSS-COMPLAINT**